**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DYNAMIC ENERGY, INC., a West Virginia Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. _____ ) ) |
| CM ENERGY HOLDINGS, LP, a Delaware limited partnership, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

Plaintiff, Dynamic Energy, Inc., through counsel, respectfully files its Complaint for Declaratory and Other Relief herein, (a) to enforce an agreement made by Defendant, CM Energy Holdings, LP, to sublease coal and mineral rights on land located in Wyoming County, West Virginia, to Plaintiff, and (b) for a determination of the rights of the parties pursuant to such Sublease Agreement.

**I.      THE PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff, Dynamic Energy, Inc. ("Dynamic"), is a for-profit corporation organized and existing under the laws of the State of West Virginia, with its principal place of business in Daniels, West Virginia.

2.      Defendant, CM Energy Holdings, LP ("CM Energy"), is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in San Diego, California. Pursuant to that certain Sublease Agreement entered into between the parties on or about January 27, 2017 (the "Sublease Agreement"), and its reference to and incorporation of Paragraph 9.10 of that certain Amended and Restated Purchase

Agreement between parties dated January 27, 2017 (the "Purchase Agreement"), service of process on CM Energy is proper when made by Registered U.S. Mail on the following:

>CM Energy Holdings, LP
>c/o Energy Capital Partners III, LLC
>11943 El Camino Real, Suite 220
>San Diego, California  92130
>Attention:  Rahman D'Argenio

>With a copy to:

>Kirkland & Ellis, LLP
>600 Travis Street, Suite 3300
>Houston, Texas  77002
>Attention:  Andrew Calder, P.C.
>           Willian J. Benitez

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy is in excess of $75,000 exclusive of interest and costs, and the matter and action is between citizens of different states.

4. This Court has subject matter jurisdiction over this action pursuant to the Sublease Agreement, which incorporates Paragraph 9.1 of the Purchase Agreement for purposes of jurisdiction.  Paragraph 9.1 provides, in relevant part, "Each party irrevocably submits to the exclusive jurisdiction of the state and federal courts located in the State of Delaware." *See* Purchase Agreement, the title page and Section 9.10 of which are attached collectively as ***Exhibit A***.  *See also*, Sublease Agreement, attached as ***Exhibit B***, at ¶ 19(j).

5. Venue is appropriate in this Court pursuant to the same Purchase Agreement which states, "Each party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit, or proceeding arising out of this Agreement or the transactions contemplated hereby in the aforementioned courts." *See* Exhibit A, Section 9.10.

6. Pursuant to the Sublease Agreement, the agreement and the parties' rights and obligations thereunder are to be governed and construed under the law of West Virginia. *See* Exhibit B, ¶ 19(f).

## II. FACTUAL ALLEGATIONS

### A. The Valuable Mining Opportunity Which Is The Subject Of CM Energy's Breach.

7. On January 27, 2017, the parties entered into the Sublease Agreement, pursuant to which CM Energy subleased to Dynamic CM Energy's interests, rights and privileges to certain coal and coal minerals available primarily through underground mining in an area defined and mapped as part of the Sublease Agreement (the "Sublease Property").

8. The Sublease Agreement included a schedule of royalty payments to be made for coal extracted from underground mining of the Sublease Property, with minimum payments – which the Sublease Agreement called "royalties" – of $10,000 per year due whether or not mining or other extraction activity generated *actual* royalties. *See* Exhibit B, ¶ 5.

9. Upon payment of rents or royalties and any other payments due, the Sublease Agreement automatically extended for successive one-year periods until the occurrence of certain provisions centering around the depletion from the property of all merchantable coal. *See id.*, ¶ 4.

10. The Sublease Agreement also provided that, should Dynamic fail to perform any obligation within its terms for a period of thirty (30) days after CM Energy provided written notice of default, then the leasehold estate created by the Sublease Agreement could be forfeited at CM Energy's election. *See id.*, ¶ 11.

11. Dynamic was eager to preserve its rights under the Sublease Agreement because of the existence on the Sublease Property of extensive metallurgical coal reserves worth in

excess of $100 million.  Dynamic planned to begin an underground mining operation on the Sublease Property for the purpose of mining to exhaustion all coal available through mining, a right it possessed prior to entering the Sublease Agreement and the sale of certain other mineral assets to CM Energy by Dynamic.

12. Dynamic also has rights to mine a property that adjoins the Sublease Property, which can be accessed only by traversing the Sublease Property either by surface or underground.  The loss of this exceedingly valuable opportunity could cause losses to Dynamic in excess of tens of millions of dollars.

### B.      The Purported Notice Of Default And Remedial Action.

13. On August 30, 2018, Dynamic received a letter from CM Energy dated August 28, 2018, asserting that Dynamic's rights under the Sublease Agreement had been forfeited because of a default in payments and because of an alleged failure to provide required documents.  The letter claimed that CM Energy had sent a letter with written notice of the default on June 20, 2018 and included a copy of that alleged letter as an attachment.  A copy of the August 28, 2018 letter, including the attached June 20, 2018 letter, is attached as ***Exhibit C***.  The earlier letter which CM Energy purported to have sent on June 20, 2018 stated that Dynamic was in default of the Sublease Agreement requirements for payment of minimum royalties, for failure to provide maps and mine plans, and for providing proof of insurance.  The letter concluded, "[k]indly remedy this situation as soon as possible to be in compliance with the terms of the Agreement.  Note that under Section 11 of the Agreement you have 30 days after receiving this written notice."  *See* Exhibit C.

14. Upon receipt of the June 20, 2018 letter on August 30, 2018, and as described in more detail below, Dynamic cured the alleged defaults.

15. The June 20, 2018 letter was not received by Dynamic or by its former attorney, who was copied on the correspondence, until August 30, 2018. To confirm the non-delivery of the June 20, 2018 letter, the intended recipient, Jay Justice, President of Dynamic, caused a search to be performed on his email account. He also inquired of Dynamic's former attorney whether he had received the June 20, 2018 letter. The search and the inquiry confirmed that the June 20, 2018 letter was not received by Mr. Justice or by Dynamic's former counsel until August 30, 2018, when it was attached to the August 28, 2018 letter. *See* November 16, 2018 e-mail from former counsel for Dynamic, attached as ***Exhibit D***.

16. On August 31, 2018, troubled by the claim of CM Energy that the Sublease Agreement was no longer in effect, but certain that the August 28, 2018 letter was actually the ***first*** notice of default, Mr. Justice contacted Rahman D'Argenio, the Chairman of CM Energy. It was these two individuals who had ***signed*** the Sublease Agreement. In the course of their conversation, Mr. D'Argenio informed Mr. Justice that the issue pertaining to the Sublease Agreement was resolved and thanked him for the remediation.

C. **The Dispute Over Non-Delivery Of Notice.**

17. To follow up on his August 31, 2018 discussion with Mr. D'Argenio, Mr. Justice, on behalf of Dynamic, also sent a letter to Roy West, the Chief Financial Officer of CM Energy Operations, to alert him that Dynamic had wired $21,304.17 to CM Energy Operations, LP in payment of all amounts due. He also showed compliance with the proof of insurance requirement, and explained that no mining progress maps existed because mining had not yet commenced. Mr. Justice asked for confirmation that all defaults under the Sublease Agreement had been cured. *See* August 31, 2018 letter from Dynamic to CM Energy, attached as ***Exhibit E***.

5

18. On September 6, 2018, and contrary to the earlier assurances of Mr. D'Argenio that all matters had been satisfactorily resolved, Mr. West responded in writing denying that the Sublease Agreement remained in effect. Mr. West claimed that his June 20, 2018 letter *was* timely received and that Dynamic had failed to respond during the contractually-required 30-day cure period. He stated that his earlier August 28, 2018 default letter had not been necessary but that it constituted notice that the Sublease Agreement was terminated. Because the Sublease Agreement was no longer in effect, he took the position that the $21,304.17 payment was too late, and that it would be refunded that day. A copy of Mr. West's September 6, 2018 letter is attached as ***Exhibit F***.

19. On September 7, 2018, Dynamic again sent a letter to CM Energy, this time through Dynamic's General Counsel, Mr. Stephen Ball. A copy of the September 7, 2018 letter is attached as ***Exhibit G***. Mr. Ball denied that the Sublease Agreement was effectively terminated, and informed Mr. West that, through Mr. Justice's exchange with Mr. D'Argenio, the issues of the status of the Sublease Agreement had been cleared up. *See* Exhibit G.

20. In a responsive letter dated September 10, Mr. West claimed that:

   a. Mr. D'Argenio was not involved in the daily operations of CM Energy and should not receive further communications on the issue;

   b. CM Properties had copies of signed return receipts for the Notices of Default;

   c. Payment for rents due had been made to the wrong company – CM Energy Operations rather than CM Operations;

   d. CM Energy was unable to immediately reject the payment as it occurred on the Friday before a holiday weekend with no notice, but the funds were re-wired back to Dynamic promptly after the Defendant learned of the transfer; and

   e. The Sublease *had* been terminated by the letter of August 28, so the August 31 payment was too late, and no grace period applied.

A copy of the September 10, 2018 letter is attached as *Exhibit H*.

21.     Despite its requests to CM Energy for the alleged proof of its receipt of the June 20, 2018 letter, Dynamic has never received any such evidence from CM Energy.  Dynamic believes that the requested information has not been provided by CM Energy because such evidence does not in fact exist and believes that CM Energy's attempt to terminate the Sublease Agreement has been in utter bad faith.

22.     Dynamic was preparing to begin an underground mining operation on the Sublease Property, and expected to mine millions of tons of coal, providing in excess of $100 million in revenue to Dynamic, and millions of dollars in royalties to CM Energy.

23.     Because CM Energy has declared the Sublease Agreement terminated and denied Dynamic access to the Sublease Property, Dynamic has been unable to commence its planned mining operations on the Sublease Property, to its detriment and significant damage.

24.     Also because CM Energy has declared the Sublease Agreement terminated and denied Dynamic access to the Sublease Property, Dynamic has been unable to access the adjoining property on which it holds mineral rights and to exercise its right to mine, to its further detriment and damage.

## COUNT I

### (Declaratory Judgment)

25.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26.     Dynamic has been denied its rights under the Sublease Agreement since August 30, 2018 when it first received notice of alleged defaults under that agreement.

27.     Dynamic cured any and all such defaults alleged by CM Energy within 24 hours of receiving the notice on August 30, 2018, and was assured by the Chairman of CM Energy, who had signed the original agreement, that Dynamic was now in good standing under the Sublease Agreement.  CM Energy nevertheless continues to deny Dynamic access to the Sublease Property.

28.     Based on the refusal of CM Energy to accept payment following the letter providing 30-day notice, Dynamic has held all funds due under the Sublease Agreement in escrow pending the resolution of this matter by the Court.

29.     A real and justiciable controversy exists between Dynamic and CM Energy as to whether CM Energy legally terminated the Sublease Agreement when the letter purporting to activate the start of a 30-day period for remediation was not received by Dynamic until its inclusion in the August 28, 2018 termination letter, and in light of the fact that Dynamic immediately cured the alleged defaults upon notice and was assured by the Chairman of the Board for CM Energy that it was then in good standing.

30.     Dynamic is therefore entitled to a Declaratory Judgment declaring that the purported termination of the Sublease Agreement by CM Energy was ineffective and that Dynamic is entitled to immediately exercise all of its rights under the Sublease Agreement.

## COUNT II

### Breach Of Contract

31.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32.     CM Energy's wrongful failure and refusal to honor the Sublease Agreement have denied Dynamic the right to exercise control over valuable mining property.

33. CM Energy's wrongful attempt to terminate the Sublease Agreement, its wrongful denial of access by Dynamic to the Sublease Property, and its wrongful denial of Dynamic's ability to exercise its mining rights secured by the Sublease Agreement have all caused damage to Dynamic, in an amount believed to be in excess of $100 million.

34. Dynamic is therefore entitled to recover compensatory damages from CM Energy arising from its breaches of the Sublease Agreement, the exact amount of which will be determined at trial in an amount in excess of the minimum diversity jurisdictional limits of this Court.

## COUNT III

### (Breach Of Implied Duty Of Good Faith, Honesty And Fair Dealing)

35. The Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 34 of this Complaint as is fully set forth herein.

36. Every contract carries with it an implied duty imposed upon the parties thereto to act in good faith, honesty and with fair dealing toward each other in the performance of the contract.

37. At all times relevant hereto, and since at least January 27, 2017, there was therefore imposed upon CM Energy an implied duty to Dynamic to perform its obligations under the Sublease agreement in good faith, honesty and with fair dealing, including by adhering to the default and notice provisions of the Sublease Agreement and by allowing Dynamic to exercise its rights under the Sublease Agreement.

38. By refusing to accept the curative actions of Dynamic, including the payment of allegedly overdue "royalties," even though those actions occurred within 24 hours of Dynamic's

receipt of the notice of alleged defaults as required by the Sublease Agreement, CM Energy breached the duty of good faith, honesty and fair dealing it owed to Dynamic.

39.     Dynamic has therefore been deprived of valuable rights under the Sublease Agreement because of the refusal of CM Energy to recognize Dynamic's curative actions within the allotted window of time.

40.     As a direct and proximate result of CM Energy's breach of the duty of good faith, honesty and fair dealing, Dynamic has suffered damage and CM Energy has benefitted.

41.     Dynamic is therefore entitled to recover compensatory damages from CM Mining arising from its breaches of the implied duty of good faith, honesty and fair dealing, the exact amount of which will be determined at trial in an amount in excess of the minimum diversity jurisdictional limits of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Dynamic Energy, Inc., through counsel, respectfully requests Judgment in its favor on its Complaint for Declaratory and Other Relief herein against CM Energy as follows:

A.     A Declaratory Judgment pursuant to 28 U.S.C. §2201(a) on Count I holding that the 30-day curative period was not activated until receipt of the August 28, 2018 letter and that the wire payment made, and the documentation provided, therefore effected a cure of Dynamic's alleged defaults, and that the Sublease Agreement remains in effect under the terms and conditions as originally specified therein such that Dynamic may immediately access the Sublease Property and begin its mining operations on the Sublease Property;

B. Judgment on Count II for compensatory damages for breach of contract in an amount to be determined at trial in excess of the minimum diversity jurisdictional limits of this Court;

C. Judgment on Count III for compensatory damages for breach of the implied duty of good faith and fair dealing in an amount to be determined at trial in excess of the minimum diversity jurisdictional limits of this Court;

D. A docket preference expediting these proceedings in accordance with Rule 57 of the Federal Rules of Procedure;

E. Both pre-judgment and post-judgment interest on all amounts awarded herein;

F. A trial by jury on all Counts of the Complaint so triable;

G. Its reasonable costs incurred herein;

H. Reasonable attorneys' fees; and

I. Such other and further relief to which it is entitled in addition to the costs and disbursements of this action.

|  |  |
|---|---|
| OF COUNSEL: | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| Richard A. Getty | |
| Danielle Harlan | By: */s/ John A. Sensing* |
| Marcel Radomile | John A. Sensing (#5232) |
| (*pro hac vice* admission pending) | Jennifer Penberthy Buckley (#6264) |
| THE GETTY LAW GROUP, PLLC | Hercules Plaza, 6th Floor |
| 1900 Lexington Financial Center | 1313 N. Market Street |
| 250 West Main Street | Wilmington, DE  19801 |
| Lexington, KY 40507 | Tel:  (302) 984-6000 |
| Tel:  (859) 259-1900 | jsensing@potteranderson.com |
| rgetty@gettylawgroup.com | jbuckley@potteranderson.com |
| dharlan@gettylawgroup.com | |
| mradomile@gettylawgroup.com | *Attorneys for Plaintiff Dynamic Energy, Inc.* |

Dated: April 4, 2019
6128240 / 44898-001